Kirkpatrick, C. J.
This is an action of debt. The declaration contains three counts. The first is upon a bond dated June 5, 1795, in the usual form. The second sets forth the same bond, and charges, that after the expiration of sixteen years from the date thereof, (no money having been paid thereon) the defendant expressly undertook, and well and faithfully promised, &c., to pay, &c. And the third count is for money lent, &c.
To the second of these counts there is a demurrer, a joinder in demurrer, and judgment thereupon in the court below for the defendant.
This demurrer is founded upon the act for the limitation of ^actions, in which it is, among other things, *138 enacted, “ that any action of debt upon any obligation with condition for the payment of money only, shall be commenced and sued within sixteen years next after the cause-of action shall have accrued, and not after;” unless some-payment shall have been made on such obligation ; and then only within sixteen years after such payment.
Statutes of limitation, with respect to contracts for the payment of money, are founded upon the presumption that,, after so long a time as that limited, the money must have-been paid. They do not avoid the contract nor annul the debt, but merely withhold the remedy. The moral obligation to pay, therefore, remains the same, though the law will not lend its aid to enforce it; nam vigilantibus et nondomientibus subse-rviunt leges.
This is not only the view which our books give us of this subject, but it is also the general sentiment of mankind, founded upon social principle; and hence we find that the statutes of limitation have been commonly called, by the-.people, the rogue’s law ; and, indeed, when they are used to-protect a man from the payment of a subsisting debt, we-cannot much dispute the justice of the appellation.
In an anonymous case in 1707, (Salk. 154.) it was holden by the then Lord. Chancellor, that if one by will or deed subject his lands to the payment of his debts, debts barred by the statute of limitations shall be paid ; for they are debts-in equity, and the duty remains ; the statute hath not extinguished that, though it hath taken away the remedy.'
In the case of the Assignees of England v. England, in 1770, (Bur. 2628.) Lord Mansfield says, “it is settled that, the statute of limitations does not destroy the debt; it only takes away the remedy.” Aston, Willes, and Blackstone-concurred in this opinion, and said that the debt still subsisted, though the remedy was taken away.
In the case of the Ex’rs of Morris v. Condit, (in the-Chancery of New Jersey) there was a bond and mortgage-outstanding for sixteen years and more, without payment,. *139 and upon bill filed to foreclose, it was insisted, upon this very act, that the recovery upon the bond was barred, and the debt gone, and that therefore there could be no remedy upon the mortgage. Bat this argument was too flimsy for the present chancellor; he held that * though the action of debt upon the bond was barred, yet the debt still subsisted, and was not gone; and as there was another remedy which was not barred by the act, that is a subpoena in equity upon the mortgages, he decreed the debt to the complainants.
If this be so, the only remaining question will be, whether a bond debt thus subsisting, for the recovery whereof an action of debt at law is barred by the statute, will be a sufficient consideration for an actual or express promise. I say an actual or express promise, for I think it must be admitted, that it is not such a duty as will raise what is called an assumpsit in the law, that is to say, an implied promise raised by the law upon the duty itself. And upon this question, I think there could be no great difficulty, oven though we had no precedent to guide us. If it were stripped of all authorities, as Judge Butter says, one would think it might be resolved by inquiring, simply, “ whether the law be a rule of justice, or whether it be something that acts in direct contradiction to justice, equity and conscience ;” but wo are not left without authority.
In the case of Hawkes and wife v. Saunders, in 1775, Cowp. 289, Lord Mansfield, in examining this subject, says, “When a man is under a legal or equitable obligation to pay, the law implies a promise, though none was actually made. Where a man is under a moral obligation, which no court of law or equity can enforce, and actually promises to pay, the honesty and rectitude of the thing is a consideration.” Thus clearly distinguishing between the consideration upon which the law will imply a promise, and the consideration upon which it will support a promise actually made. And the distinction is this, that in all cases where the duty or obligation is such as that a court of law or a court of equity can grant relief, the law will raise a prom *140 ise; but that in all cases where the duty or obligation is such that neither a court of law nor a court of equity -can grant relief, but it rests in the conscience only, there the law will not raise a promise, but yet it will, support a promise actually made, upon the ground of moral obligation. If a man, says Lord Mansfield, promises to pay a j ust debt, the recovery whereof is barred by the statute of limitations, or a debt contracted during his, minority, or a debt from which he is discharged by a certificate of bank.ruptcy, or if he promise to perform a secret trust, for which no subpoena *lies, or'a trust void by the statute of •frauds, in all these cases he is bound by his promise. The moral obligation is a sufficient consideration. In some of ;these cases, too, if not in all, it is manifest that the action must be founded not upon the original contract or obligation, for the remedy upon that is gone, but upon the subse- • quent promise to pay.
Upon the reason of the thing, therefore, as well as upon ¿¡the uniform and unequivocal course of decision in the books, I am of opinion, that
The judgment of the court below must be reversed, and íthát the judgment of this court be entered for the plaintiff.
Eokd, J.
The defendant made a bond many years ago,
’but had paid nothing'on it for principal or interest, within .sixteen years next before the commencement of the suit. ‘.The statute of 1799, (Rev. Laws 411, sec. 6,) enacts, “ that -every action of debt on any obligation for the payment of .money only, shall be commenced within sixteen years next after the cause of such action shall have accrued, and not after; but if any payment shall have been made on such specialty, within or after the said period of sixteen years, then an action on such specialty within sixteen years after such payment, shall be good and effectual in law, and not after.” This statute took away all remedy on the bond itself, and therefore the plaintiff laid a second count in the *141 declaration, charging that the defendant made such a bond, and in consideration thereof, afterward, only a short time before the commencement of the suit, promised to pay it.. To this count the defendant put in a demurrer, which raises the. question, whether such a promise is sufficient to maim tain an action. I am of opinion it is not.
The rule of law was never doubted, so far as 1 know, that every indebitatus assumpsit must state the cause for which the debt accrued, as that it was for money lent, goods sold and, delivered, work and labor done and performed, or whatever else was the cause of the debt; and if the-count omits to state the cause or consideration of the debt, the judgment becomes a nullity, and may either be arrested in the same court, or reversed on a writ of error. Bul. N. P. 128, Cro. Ja. 206. Now this count sets out that the defendant was indebted by bond; but a bond is only the evidence of a debt, and not the cause or consideration. *To say that the defendant was indebted by bond, is no more a disclosure of the consideration, than to say ho was indebted by book, therefore the count is defective in substance, and wholly insufficient to maintain an assumpsit.
But this count is liable to another fatal objection, which is, that a promise to pay a specialty is void. A suit was once brought on a promise to pay a judgment, and it was called by the court, “ a new species of action,” “ an attempt to turn a judgement debt into a debt by simple contract;” and with one voice the action was put out of court. Cowp. 128.
It is said, that the defendant is under a moral obligation to pay the debt, notwithstanding the act of the legislature bars the remedy on the bond. Gan there be a greater reproach than to charge the legislature with denying a remedy for a moral obligation or duty ? and how is the charge supported ? a bond imports a legal obligation to pay, but how does it import a moral one? Some bonds are-given to procure the commission of crime; some to maintain *142 houses of ill fame, and procure their victims; some are obtained by fraud, and many by mistake in the settlement of accounts. What moral obligation' is in these ? Every bond imports, prima facie I admit, a legal obligation to pay the money, but as to the morality on which it is founded, it may be moral or it may be immoral, and the obligation itself is no proof of either. How, therefore, does being indebted by bond shew a moral obligation ?
It is said that courts of law always allowed a simple con•tract, after it had been barred by the statute of limitations, •to be revived by a new promise,' in consideration of the old debt or duty ; and therefore a bond may be revived in like manner. But the analogy does not hold, for if the way to revive an old promise, is by making a new one, then the way to revive an old bond, is by making a new one ?
The analogy between reviving a bond and a promise fails in another respect, for on a new promise the declaration must set out a moral consideratipn or duty, as for money lent, or whatever it is; and the honest consideration so stated in the count, and proved on the trial, was what first induced courts of justice to support the new promise, in .evasion of the statute of limitations. But if a promise is to revive a bond, the consideration (or considerations, as there are often many) for which the bond was *given .ought to be dispensed with, in pity to the frailty of human memory after sixteen or twenty years, to say nothing of the misrepresentation, and even perjury, that might be let in with the proof of such stale transactions. But if the proof of a moral consideration be so difficult, as to be dispensed with, on the part of the plaintiff, how is the defendant to .shew that the consideration of the bond was immoral and corrupt, after the bond against him has .been kept back for sixteen or twenty years, till perhaps his witnesses are dead ? As to his .having promised to pay the bond,' we know that the promise is hardly ever a direct one; it is to be made out by circumstances; and the subtilties are so very fine *143 .concerning what amounts to evidence of a promise, ,-that a plain man can hardly open his mouth without letting out something that would be called evidence to be left to a j ury. Such evidence is admissible to prove a promiso after six years, and the rule would be the same after sixteen.
Courts of justice should not allow that any statute is contrary to moral obligation; by yielding to this conceit in relation to the statute of 21 Ja. 1, for barring simple contract demands after six years, they spun and wove theories so thin, so subtile, and so full of light aud shade, about revivals (after death by the statute) aud about equivocal sayings that might be evidence of a promise, (though none was directly made) that a man must be wiser than Wolomon, and as circumspect as Argus, to reap the least benefit from that statute; in fact they converted a statute-made for the limitation and stopping of actions into the occasion of a thousand litigations, and later judges regret that their predecessors had not adhered to the plain rule of the statute, and not been allured away from it by this moral phantom.
We have now a statute limiting actions on bonds to sixteen years; as yet we are bound by no prior decision upon it; we have before us the first case; if we divide bonds like simple contracts into soul and body, and allow that the statute may kill the body, but has no power over the soul or moral part; if we plunge bonds after sixteen years into that troubled ocean where simple contracts after six years have found no rest, we shall have less excuse than our predecessors had, and succeeding judges will cast the blame of the precedent on us who made it.
My opinion, therefore is, that the bond aud the debt are identical and inseparable, so that the legal destruction of ono is the *destruction of the other; that the statute, in barring the remedy for the debt, intended to bar the debt itself, the moral duty or whatever it may be called, and-nothing will revive it but giving a new security that imports *144 a consideration on the face' of. it, such as a bond or a note,, ■which, if received in payment, revives the debt within the-words of the statute.
Let the judgment of the Common Pleas be affirmed.
Judgment affirmed.